613 S.E.2d 914

**STATE of West Virginia ex rel. Chrystal SAYLOR, Petitioner,**

**v.**

**Honorable Christopher WILKES, Judge of the Circuit Court of Berkeley County; Ted Smith and Ryan's Family Steak Houses, Inc., Respondents**

**No. 32042.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 2005.

Decided May 11, 2005.

burial in a conduit at a shallower depth if the twelve-inch depth cannot be accomplished.

Barry P. Beck, Power, Beck & Matzureff, Martinsburg, West Virginia, Attorney for the Petitioner.

William D. Turner, Pyles, Haviland, Turner & Smith, LLP, Lewisburg, West Virginia, Attorney for Amicus Curiae WV Employment Lawyers Association.

Glenn P. Hare, Steptoe & Johnson, Martinsburg, Michael S. Pitts (Pro Hac Vice), Nexen Pruet Adams Kleemeier, LLC, Greenville, SC, Attorney for the Respondents.

ALBRIGHT, Chief Justice.

Chrystal Saylor as the plaintiff below (hereinafter referred to as "Petitioner") seeks a writ of prohibition to stop enforcement of the January 5, 2004, order of the Circuit Court of Berkeley County staying proceedings in the employment discrimination and constructive discharge suit she had filed against defendants below, Ted Smith and Ryan's Family Steak Houses, Inc. (hereinafter "Respondents" when referred to collectively), and compelling arbitration of the employment-related claims. We grant the requested relief based on our review of the law, including that offered by the parties in their briefs and during oral presentation, as

well as that provided by brief of the amicus curiae.[1]

## I. Factual and Procedural Background

Petitioner is a former employee of the Ryan's Family Steak Houses, Inc. (hereinafter "Ryan's" when only the company is referenced) restaurant in Martinsburg, West Virginia, where she worked as a waitress. Ted Smith was an assistant manager at the restaurant.

A prerequisite for consideration of any applicant for employment with Ryan's is the completion by the candidate of a "Job Applicant Agreement to Arbitration of Employment–Related Disputes" (hereinafter referred to as "Petitioner's Agreement") with Employment Dispute Services, Inc. (hereinafter referred to as "EDSI"). Following are the introductory paragraphs of Petitioner's Agreement:

> Your potential Employer ("signatory company" or "Company")[2] has entered into an agreement with Employment Dispute Services, Inc. (EDSI) to arbitrate and resolve any and all employment-related disputes between the Company's employees (and job applicants) and the Company under EDSI's program. The following Agreement between you and EDSI is a "selection of forum" agreement by which you agree that employment-related issues between you and the Company shall be resolved through Arbitration. Any arbitration matter shall be heard and decided under the provisions and the authority of the Federal Arbitration Act, 9 U.S.C. sec. 1, as applicable.

> The purpose of this agreement is to provide You and the Company a forum in which claims or disputes with the Company and any other signatories may be resolved by arbitration rather than litigation. This Agreement does not restrict you from filing a claim or charge with any state or federal agency, for example, Equal Employment Opportunity Commission, state unemployment agency, state workers' compensation commission, where applicable.

Rather, the Agreement applies only to State or Federal court proceedings.

The remainder of the two-page Agreement is divided into two parts, one containing provisions regarding acceptance of the EDSI document and the other detailing the terms of the contract with EDSI. These sections, including internal emphasis by underscore, italics, boldface and capitalization, read as follows:

### A. *Acceptance of EDSI Agreement*

Important aspects of Your acceptance of this Agreement are:

1. You retain all the substantive legal rights and remedies under state and federal law that you would otherwise have as an employee/applicant of the Company, and neither you nor the Company will have any additional substantive legal rights or remedies;

2. **YOU WAIVE ANY RIGHT ARISING UNDER EITHER STATE OR FEDERAL LAW TO HAVE YOUR CLAIM RESOLVED BY A JURY. RATHER, ANY CLAIM YOU MAY FILE WILL BE FINALLY RESOLVED BY A PANEL OF THREE NEUTRAL ARBITRATORS.**

3. You retain the right to file a claim or charge with any state or federal agency that would otherwise handle your claim or charge;

4. Except as to claims or charges finally resolved within a state or federal agency, you and the Company agree to use EDSI to resolve legal claims concerning you that either party would otherwise bring in state or federal court;

5. An EDSI decision on any dispute shall be **FINAL AND BINDING** on all parties.

### B. *Agreement*

1. In consideration of my execution of this Agreement and consent to the terms herein, EDSI agrees to provide an *unbi-*

---

1. We take this opportunity to recognize the insightful contributions of the West Virginia Employment Lawyers Association to this case as amicus curiae.

2. The arbitration services of EDSI are utilized by several companies in the restaurant business; the reference to " 'signatory company' or 'Company' " in the context of this case is to Ryan's.

*ased* arbitration forum, impartial Rules and Procedures, and a fair hearing and decision based on my claim or dispute I (employee/job applicant) may file or defend. Further, I acknowledge that by agreeing to resolve any future employment-related claims through arbitration rather than litigation, EDSI agrees to provide through its arbitral forum the additional benefits of a substantially quicker, less burdensome and less expensive procedure for resolution of my claims as compared to typical litigation in state or federal court.

2. In consideration of my receipt of the benefits set forth above in Paragraph 1, I understand and agree to the following:

A. Any employment-related dispute between the Company, me and/or other signatories which would otherwise be brought in state or federal court will be brought **ONLY** in the EDSI arbitration forum and under EDSI Rules and Procedures. (Other signatories to the same Agreement with EDSI may be, for example, supervisors, managers, and agents of the Company.) I consent to allow EDSI to amend the applicable Rules and Procedures from time to time, at its discretion, in order to insure its ability to meet its obligations set forth in Paragraph 1 of this section. However, should the EDSI Rules and Procedures be amended, I shall have the right to choose to have my employment-related dispute resolved under Rules and Procedures in effect on the date I sign this Agreement or the Rules and Procedures in effect on the date I file a claim with EDSI. I agree that except as to claims or charges finally resolved within a state or federal agency, any and all disputes I may have with the Company, or its officers, managers, or agents, or that the Company, its supervisors, managers or other agents may have with me which would otherwise be decided in court, shall be resolved only through arbitration in the EDSI forum and **NOT THROUGH LITIGATION IN STATE OR FEDERAL COURT.**

B. The decision of an EDSI arbitration panel is final and binding on all parties. There is no appeal by any party to either state or federal court except as provided under the provisions of the Federal Arbitration Act.

C. This agreement is with EDSI, not with the Company, and is not, nor is it intended to be, an employment contract or any part of an employment contract. This agreement does not affect or alter My "at will" employment relationship with the Company.

D. The Company and any other successor or assign, its signatory superiors, managers and other agents are "third party beneficiary" of My agreement with EDSI, and I am a "third party beneficiary" of others' agreements with EDSI. A "third party beneficiary" is someone who benefits legally from a contract between two other parties.

E. I understand that I *must* use the EDSI forum for any and all employment-related disputes and/or claims and/or related tort claims I may have against the Company and all other signatories to this Agreement which could otherwise be brought in court, even if the agreement has been terminated since the date the claim arose. I understand that a claim is deemed to arise on the date the conduct giving rise to the claim is alleged to have occurred. In South Carolina and Texas this Agreement shall apply to personal injury tort claims where the Company is a "non-subscriber" and is not a covered employer under the state's workers' compensation insurance program.

F. If any of the foregoing terms of the Agreement are determined to be in violation of any law, rule or regulation or are otherwise unenforceable, that determination shall not affect any other clauses of the Agreement. All other clauses shall remain in full force and effect. If any EDSI Rules or Procedure is determined by any court or competent jurisdiction to be invalid or unenforceable, EDSI shall be permitted a reasonable period of time to amend its Rules and Procedures in order to accomplish the arbitration purpose of this Agreement.

G. My Agreement shall continue for the period of my employment with the

Company unless mutually terminated in writing by EDSI and Me. However, I acknowledge that if this Agreement is terminated, any claim that arose prior to the termination of the Agreement shall be covered by this Agreement and must be submitted to arbitration in the EDSI forum.

H. My Agreement supersedes any and all prior understandings and agreements between the parties, or with the Company, concerning the resolution of any and all claims or disputes between the Company, its supervisors, managers, and/or other agents, and me. It contains the entire understanding and agreement of the parties regarding these subjects. My agreement may not be altered or amended, except in writing signed by the President of EDSI and me.

I. The Agreement is effective immediately. *I understand I have the right to consult with an attorney of my choice prior to executing this agreement.*

J. I have read the Agreement carefully and have been given a copy of full EDSI Rules and Procedures. I knowingly and voluntarily agree to be bound by the terms and conditions of the Agreement and EDSI Rules and Procedures, as modified and/or amended from time to time, except that should the EDSI Rules and Procedures be modified or amended, I shall have the right to choose to have my employment-related dispute resolved under the Rules and Procedures that are in effect on the date I sign this Agreement or the Rules and Procedures in effect on the date I file a claim with EDSI.

Following thereafter are spaces to insert the date, information regarding the applicant/employee, signature lines for the applicant/employee and a witness, and information regarding parent or guardian approval if the applicant is under the age of eighteen. Petitioner's Agreement also contains the following requirement: "This Agreement must be notorized [sic] if not witnessed by an Agent of the Company." There following is the mailing address and phone number of EDSI. Petitioner signed the EDSI document on January 14, 2003, as part of the application

process, was later hired by Ryan's as a server and ended her employment at Ryan's in July 2003.

Ryan's had a separate contract with EDSI (hereinafter referred to as "Ryan's Agreement"). Under Ryan's Agreement, Ryan's paid for EDSI to, among other things, provide an arbitral forum for Ryan's and its job applicants and employees, and to train Ryan's managers and supervisors in the alternative dispute resolution program administered by EDSI. EDSI also agreed to "assist the Company in the conduct of the Company's action to enforce its rights as a third party beneficiary." Ryan's Agreement was subject to cancellation by Ryan's upon ten days written notice.

On October 3, 2003, Petitioner filed a complaint in the lower court based on violation of the West Virginia Human Rights Act, claiming specifically that she was sexually harassed by an assistant manager at Ryan's which effectively resulted in constructive discharge from her employment with Ryan's. Through the complaint, Petitioner also sought a declaratory judgment on the validity of the mandatory, pre-employment arbitration agreement she had signed with EDSI, to which Ryan's ostensibly was a third-party beneficiary. Respondents reacted by petitioning the court below to compel arbitration and to stay further circuit court proceedings pursuant to the provisions of the Federal Arbitration Act (hereinafter referred to as "FAA").[3] Petitioner argued that the FAA did not govern because Petitioner's Agreement was not a valid and enforceable contract and was an ineffective means for vindicating her statutory rights. By order dated January 5, 2004, the lower court found the arbitration agreement enforceable and ordered that the employment dispute be resolved in an arbitral rather than judicial forum. Petitioner's reconsideration request was likewise denied by order dated July 20, 2004. Thereafter Petitioner sought relief in prohibition through this Court and we issued a rule to show cause order on October 21, 2004.

3. 9 U.S.C. §§ 1 to 16.

## II.  Standard of Review

■ We have acknowledged that a petition for a writ of prohibition is an appropriate method by which to obtain review by this Court of a circuit court's decision to compel arbitration.  *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 555, 567 S.E.2d 265, 271 (2002).  As it is an extraordinary remedy, "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari."  Syl. Pt. 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953).  We have further said that

> [i]n determining whether to entertain and issue the writ of prohibition … not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996).  Additionally, our review of whether Petitioner's Agreement represents a valid and enforceable contract is de novo.  *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 555–56, 567 S.E.2d 265, 271–72 (2002).  With these principles as our guide, we proceed to examine the issues raised.

## III.  Discussion

Petitioner's general assertion is that the lower court's decision to compel arbitration pursuant to the provisions of the FAA is based on the erroneous finding that Petitioner's Agreement was a valid and enforceable contract.  The FAA, initially enacted by Congress in 1925, promotes the enforcement of arbitration agreements involving interstate commerce, including employment-related arbitration agreements,[4] but only when such agreements constitute valid contracts under state law.[5]  Section two of the FAA specifically provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (1947) (emphasis added).  The scope of this section of the FAA was addressed in the following way by the United States Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 103 S.Ct. 927, 74

---

4.  The express statutory exception of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" was narrowly defined by the United States Supreme Court in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), to exclude only those employment arbitration agreements of workers actually engaged in transportation of goods in commerce.  9 U.S.C. § 1 (1947).

5.  As the U.S. Supreme Court explained in *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]."  *Id.* at 687, 116 S.Ct. 1652.

L.Ed.2d 765 (1983), a case involving enforcement of an arbitration clause in a construction contract: "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 24, 103 S.Ct. 927. The high court went on to say in *Moses* that the enforcement provisions of the FAA applied equally to state and federal courts. *Id.* at 26 n. 34, 103 S.Ct. 927. The following year, the Supreme Court in *Southland Corporation v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), found that the FAA preempted state arbitration law. The Court said in *Keating* that, other than the statutory requirements that the disputed contract involve commerce and be subject to the same bases for revocation as other contracts, there was "nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." *Id.* at 11, 104 S.Ct. 852. Several years later, the Supreme Court found no inherent problem with statutory claims such as a Human Rights Act claim being part of an arbitration agreement enforceable pursuant to the FAA. " 'By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by that statute; it only submits their resolution in an arbitral, rather than judicial, forum.' *Mitsubishi [Motors Corp. v. Soler Chrysler–Plymouth, Inc.* ], 473 U.S. [614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ], at 628[105 S.Ct. 3346]." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (considering a case involving an age discrimination claim). Nevertheless, the Supreme Court in *Gilmer,* again quoting from its earlier decision in *Mitsubishi,* stressed:

> "Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.' *Mitsubishi,* 473 U.S., at 627[105 S.Ct. 3346]."

500 U.S. at 33, 111 S.Ct. 1647. Keeping with this proposition, this Court has found that arbitration clauses are subject to attack under state contract law principles. *State ex rel. Dunlap v. Berger,* 211 W.Va. 549, 567 S.E.2d 265 (2002) (case involving consumer protection law). We recently had occasion to examine whether state contract principles would defeat an arbitration agreement in an employment-related context in *State ex rel. Wells v. Matish,* 215 W.Va. 686, 600 S.E.2d 583 (2004). In *Wells,* we upheld the validity of an arbitration provision by finding, among other things, that the contract at issue was not a contract of adhesion and the employee as a sophisticated party had freely negotiated the terms of his employment agreement.

The particular state contract law principles upon which Petitioner in the instant case relies to support the claim that the arbitration document she signed was an unenforceable contract include: the document was an unconscionable contract of adhesion, it lacked consideration and the arbitral forum EDSI would provide pursuant to Petitioner's Agreement would not afford an effective means to vindicate her rights under the Human Rights Act.

We begin our examination by observing generally that the document Petitioner signed was not with Ryan's but with EDSI. As summarily mentioned in Petitioner's Agreement, Ryan's had separately contracted with EDSI to provide arbitration services for all employment-related disputes between Ryan's and its employees. Apparently Ryan's Agreement with EDSI was executed some time before Petitioner applied for a job at Ryan's. Although Petitioner's Agreement purports to be with EDSI, no signature of an EDSI representative is required on Petitioner's Agreement and a signature line for someone from EDSI does not appear on the form. Petitioner's Agreement is an adhesion contract in that it is a "[s]tandardized contract form offered ... on essentially [a] 'take it or leave it' basis.... [leaving the] weaker party ... no realistic choice as to its terms." *Black's Law Dictionary* 40 (6th ed. West 1990). *See also Copley v. NCR Corp.,* 183 W.Va. 152, 156, 394 S.E.2d 751, 755 (1990) ("[T]he form nature of the contract, containing no individualized terms relating to ... [the plaintiff's] employment, bespeaks a contract of adhesion.")

We have recognized that it is likely that the bulk of the contracts signed in this country are contracts of adhesion and are generally enforceable. *See State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002). However, when the "gross inadequacy in bargaining power" combines with "terms unreasonably favorable to the stronger party," the contract provisions will be found unconscionable which in turn renders the contract unenforceable. *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 604, 346 S.E.2d 749, 753 (1986) (internal citations omitted). "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and [ ]the existence of unfair terms in the contract.[ ]" Syl. Pt. 4, in part, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co.*, 186 W.Va. 613, 413 S.E.2d 670 (1991). In the context of arbitration agreements,

[i]t is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges that the arbitration provision was unconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.

Syl. Pt. 3, *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.*, 160 W.Va. 473, 236 S.E.2d 439 (1977).

After analyzing these considerations in light of the facts in this case, we find Petitioner's Agreement an unconscionable adhesion contract which is unenforceable. The bargaining position between Petitioner and EDSI was grossly unequal. Petitioner, possessing only a tenth grade education, had little understanding of the law generally or arbitration specifically at the time she sought the low-paying job as a server or waitress with Ryan's, a multi-state restaurant chain.

EDSI is a corporation which fashioned Petitioner's Agreement, under the direction of legal counsel, to meet its needs and the needs of the companies, including Ryan's, which had contracted for the arbitration services of EDSI. Petitioner was not apprised of the terms of the relationship, contractual or otherwise, between EDSI and Ryan's and it is likely that Petitioner did not even realize that she was signing a document with any entity other than Ryan's since the arbitration document was presented to her by someone at Ryan's as part of an application packet. The terms of Petitioner's Agreement were not negotiable and clearly weighed in favor of EDSI and the companies with whom EDSI contracted to provide arbitration services. EDSI retained the right to unilaterally modify rules governing arbitration without input or notice to Petitioner before, during or after amendments are made. At the same time, Ryan's Agreement provided that EDSI would train Ryan's managers and supervisors regarding the dispute resolution program EDSI administered. Additionally, Petitioner's Agreement reflects gross disparity of the values exchanged between Petitioner and EDSI, as is evident in our later discussion of Petitioner's argument regarding lack of consideration.

The court below placed particular emphasis on the fact that EDSI used capital lettering and boldface print to highlight important sections of Petitioner's Agreement. While such efforts may prove to show intent to provide clear information, that alone cannot overcome the one-sidedness of the proposal. Underscoring a provision that a job applicant has the right to consult with an attorney prior to signing a contract is hardly putting an applicant of a low-paying job on equal footing with a corporation such as EDSI. Moreover, even if an applicant in Petitioner's position would be able to manage to afford an attorney, doing so would hardly leave a favorable impression with the company to which she is applying. The "right" afforded to seek legal advice is illusive at best.

These examples support our finding the arbitration agreement unenforceable as an unconscionable contract of adhesion in that they demonstrate a flagrant disparity in bargaining power, confirm a lack of meaningful alternatives available to Petitioner and estab-

lish the omission of critical terms and conditions in the arbitration document.

■ Petitioner also asserts that the EDSI document is unenforceable because it lacks consideration. As this Court stated in syllabus point one of *Tabler v. Hoult*, 110 W.Va. 542, 158 S.E. 782 (1931), in contract formation "[a] valuable consideration may consist either in some right, interest, profit or benefit accruing to the one party, or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other." In *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453 (1986), we further recognized that

> [c]onsideration is ... an essential element of a contract. Consideration has been defined as "some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another." 17 Am.Jur.2d, Contracts, Section 85. A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract. 17 Am.Jur.2d, Contracts, Section 96.

*Id.* at 373, 342 S.E.2d at 458–59 (some citations omitted).

Respondents argue that the lower court correctly concluded that Ryan's offer of employment to Petitioner supplied the necessary consideration to form a binding contract. Respondents support this argument by directing us to Restatement (Second) of Contracts § 71(4) and asserting that the source of the consideration is largely irrelevant as long as the consideration is bargained for in exchange for the promise.[6] Based upon our examination of not only Petitioner's Agreement but also of Ryan's Agreement we find the lower court's conclusion to be flawed.

Under Ryan's Agreement, EDSI was obligated to administer and provide access to an alternative dispute resolution process and Ryan's was only required to pay a fee for that service. EDSI's agreement with Ryan's did not actually require Ryan's to submit its employment claims to the EDSI arbitration forum. As observed in an opinion filed on March 9, 2005, by the U.S. Sixth Circuit Court of Appeals in a case in which the federal court was called upon to examine these provisions along with provisions from the employee arbitration agreement: "[T]he Arbitration Agreements that Plaintiffs executed misrepresent the meaning of the EDSI/Ryan's agreement by stating that Ryan's 'has entered into an agreement with [EDSI] to arbitrate and resolve any and all employment-related disputes. between the Company's employees (and job applicants) and the Company.'" *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 380 (6th Cir.2005).

Since Ryan's had not promised to submit its employment-related claims to arbitration, the only possible basis to assert that Ryan's actions constituted adequate consideration was that Ryan's promised to review a candidate's application for employment if the applicant promised to arbitrate employment disputes. Federal courts applying the contract law of Indiana and Tennessee to arbitration agreements involving EDSI and Ryan's have concluded that "merely a promise to consider an applicant's application, not employ her[,] ... standing alone, will not bear the weight required to allow us to construe the Arbitration Agreement as a binding contract." *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F.Supp.2d 985, 1001–02 (S.D.Ind.2001) (applying Indiana contract law); *see also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d at 381 ("Ryan's has failed to demonstrate that, under Tennessee law, an employer's promise to consider an employment application is adequate consideration for a promise to arbitrate employment disputes that are wholly unrelated to the application or hiring process."); *Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 760 (7th Cir.2001) ("[T]he defendants provide no evidence that any Indiana court has ever held that a mere promise to consider an application for employment would provide consideration for a separate contract.").

■ It is well-established under contract law in West Virginia that no legal contract exists if the minds of the parties are not in agreement with the essential elements or contract "fundamentals ... [which

---

**6.** *Restatement (Second) of Contracts* § 71(4) states: "The performance or return promise may be given to the promisor or to some other person. It may be given by the promisee or by some other person."

include] competent parties, legal subject matter, valuable consideration and mutual assent." Syl. Pt. 5, in part, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926). We would be hard-pressed to find that mutual agreement as to consideration was reached in this case when it is clear that Petitioner's Agreement expressly misrepresented that Ryan's was similarly bound under a separate agreement to submit all its employment disputes through the EDSI arbitration process. While the promise of a third-party beneficiary to a contract may serve as the requisite consideration to form a binding contract as Respondents contend, that conclusion is premised on such consideration being bargained for in exchange for the return promise. It is self-evident that misrepresentation of relevant facts precludes a bargained-for exchange. The only possible third-party consideration represented by the terms of Petitioner's Agreement we note is found in Ryan's promise to review the application of job candidates in exchange for the applicant's waiver of valuable rights by signing the arbitration agreement. Generally any act done by a promisee at the request of a promisor is a sufficient consideration to form the basis of a binding contract when the promises are made with full knowledge of all of the circumstances. *See Lowther Oil. Co. v. Guffey*, 52 W.Va. 88, 91, 43 S.E. 101, 102 (1903) (Any amount of consideration forms a sufficient basis for an enforceable contract "unless fraud can be shown or the contract is so unfair and uneven as to render its enforcement equivalent to the perpetration of fraud."). Petitioner's lack of knowledge of the facts coupled with the gross imbalance of values exchanged lead us to conclude that Ryan's meager promise to review an employment application is insufficient consideration to support enforcement of an applicant's promise to submit all employment-related disputes, arising prior to as well as after being employed, to arbitration. Accordingly we hold that an employer's promise merely to review an employment application in exchange for a job applicant's promise to submit employment-related disputes not associated with the application process to arbitration does not represent consideration sufficient to create an enforceable contract to arbitrate such employment disputes. Thus, the Petitioner's Agreement is also unenforceable under state law principles due to lack of adequate consideration.

## IV. Conclusion

Petitioner's Agreement with EDSI must fail under general contract law principles in this state as it is an unconscionable contract of adhesion and it lacks consideration. Accordingly, we grant the requested writ of prohibition to bar enforcement of the January 5, 2004, order of the Circuit Court of Berkeley County through which proceedings in the employment-related suit Petitioner filed were stayed and arbitration of the disputed matters was ordered.[7]

Writ of prohibition granted.

---

7. Petitioner also raised various concerns about the arbitration Rules and Procedures developed by EDSI resulting in a biased and unfair alternative dispute resolution process. Because discovery ceased once the motion to compel arbitration was filed, we do not have before us pertinent information to make meaningful determinations regarding these concerns. Trial courts would be well-served when faced with motions to compel arbitration agreements to allow limited discovery to proceed so that the issues raised may be fully developed and addressed.