703 S.E.2d 543

STATE of West Virginia ex rel. AT & T MOBILITY, LLC and AT & T Mobility Corporation, Petitioners

v.

Honorable Ronald E. WILSON, Judge of the Circuit Court of Brooke County, and Charlene A. Shorts, Respondents.

No. 35537.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2010.

Decided Oct. 28, 2010.

Jeffrey M. Wakefield, Flaherty, Sensabaugh & Bonasso, Charleston, WV, Archis A. Parasharami, Evan M. Tager, Pro Hac Vice, Mayer & Brown, Washington, D.C., for Petitioners.

Robert L. Bailey, William David Wilmoth, Michael T. McCarthy, Steptoe & Johnson, Charleston, WV, for Respondent, Palisades Collections.

Christopher J. Regan, James G. Bordas, Jr., Jason E. Causey, Bordas & Bordas, Thomas E. McIntire, Thomas E. McIntire & Associates, Wheeling, WV, Chanler A. Langham, Jonathan Bridges, William R. Merrill, Pro Hac Vice, Susman Godfrey, LLP, Dallas, TX, for Respondent, Short.

PER CURIAM:

Petitioners AT & T Mobility, LLC and AT & T Mobility Corporation (hereinafter collectively referred to as "AT & T Mobility") seek a writ of prohibition in connection with the December 1, 2009, order of the Circuit Court of Brooke County denying their motion to compel arbitration. AT & T Mobility asserts that the trial court misapplied this Court's decision in *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 567 S.E.2d 265 (2002), as the basis for its refusal to refer the underlying matter to arbitration. Because the trial court erroneously concluded that any arbitration agreement which contains language banning class action relief is unconscionable, we grant a writ of prohibition as moulded to

address the lower court's misinterpretation of our decision in *Dunlap*.

## I. Factual and Procedural Background

In February 2003, Respondent Charlene Shorts purchased a cellular phone and set up an account for wireless telephone service with AT & T Wireless.[1] When Ms. Shorts failed to make timely payments in connection with this account, AT & T Wireless terminated her service on May 6, 2003. As a result of that termination, an early termination fee of $150 was assessed pursuant to the contractual arrangement under which Ms. Shorts purchased and activated her mobile phone in 2003.[2]

AT & T Wireless eventually sold the debt of Ms. Shorts' unpaid termination fee to Palisades Collections LLC ("Palisades"). Seeking to collect the unpaid termination fee plus interest,[3] Palisades filed a complaint in June 2006 against Ms. Shorts in the Magistrate Court of Brooke County, West Virginia. Denying any liability for the subject debt, Ms. Shorts asserted a counterclaim against Palisades under the West Virginia Consumer Credit and Protection Act ("CCPA"). *See*

W.Va.Code §§ 46A–1–101 to –8–102 (2006). After Palisades removed the action to the Circuit Court of Brooke County, Ms. Shorts amended her counterclaim to add class action claims[4] against AT & T Mobility.[5]

Following removal to federal court and subsequent remand to the circuit court,[6] AT & T Mobility moved the circuit court to compel Ms. Shorts to pursue her counterclaims in arbitration based on her consent to various wireless agreements.[7] AT & T Mobility argued that the primary obligation to arbitrate arose under the terms of the 2003 service agreement. It maintained, however, that the procedural aspects of the arbitration were governed by a service agreement that Ms. Shorts entered into with Cingular in 2005 along with various "consumer friendly" modifications that AT & T Mobility implemented for all of its customers in 2006 and 2009.[8]

In responding to the motion to compel below, Ms. Shorts took the position that the terms of the 2003 agreement were the only applicable provisions that governed the issue of arbitration. To decide which arbitration

1. AT & T Wireless merged with Cingular in October 2004. As a result of a corporate name change, Cingular became AT & T Mobility in 2007.

2. Under that original contract, Ms. Shorts was required to arbitrate any disputes she had with AT & T Wireless on an individual rather than a class wide basis.

3. Through that complaint, Palisades sought to recover a debt of $794.87 plus prejudgment interest of $242.52 for an aggregate amount of $1,037.39.

4. The class of individuals that Ms. Shorts seeks to represent is: "All persons who agreed to a term contract for cell phone service with Cingular or AT & T between June 23, 2002, and the present, and who, at any time during the term of the contract, had a billing address in West Virginia."

5. Through the amended counterclaim, which includes three claims for relief under the CCPA, Ms. Shorts seeks actual damages, statutory damages, statutory attorney's fees, and cancellation of the underlying debt.

6. AT & T Mobility removed the case to U.S. District Court for the Northern District of West

Virginia pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) (2005). The district court remanded the case to the circuit court; the Fourth Circuit Court of Appeals affirmed the remand; and the U.S. Supreme Court denied certiorari.

7. According to AT & T Mobility, Ms. Shorts agreed to arbitration under the 2003 wireless agreement based on terms contained in the service agreement which provided that usage of the phone indicated consent to the contractual terms. With regard to the 2005 agreement with Cingular, Ms. Shorts signed a service agreement that contained an agreement to arbitrate disputes.

8. Those "consumer friendly" terms include the following: (1) both parties can bring claims in magistrate court in lieu of arbitration; (2) AT & T Mobility pays the costs of arbitration; (3) there is no restriction on remedies, i.e. punitive damages and attorney's fees may be awarded; (4) a customer's billing address determines the venue of arbitration; (5) a customer may opt to have an in-person hearing, a telephonic hearing, or a "desk arbitration"; (6) confidentiality is not required; (7) AT & T Mobility may not seek attorney's fees; and (8) AT & T Mobility is required to pay customers either the arbitration award or $10,000 plus double attorney's fees if the award

provisions were controlling, the trial court looked to the language in the Cingular service contract that Ms. Shorts executed in 2005, which provided that "Cingular and you (such references include our respective ... predecessors in interest [and] successors and assigns) agree to arbitrate all disputes and claims ... arising out of or relating to this Agreement, or to any prior oral or written agreement, for Equipment or services between Cingular and you." Citing to this language, the trial court opined: "[W]hen Shorts was sued in 2006 by Palisades, she had the right to arbitrate her 2003 AWS [AT & T Wireless] phone service disagreement under the more beneficial Cingular arbitration terms." Rejecting Ms. Shorts' position that the 2003 agreement was singularly controlling, the trial court ruled: "It is the 2005 arbitration agreement, with its consumer oriented revisions in December 2006 and March 2009, that the court finds to be ... the focus of the legal issue before the court." [9]

After discussing the array of customer-oriented improvements effectuated by the 2006 and 2009 modifications to the arbitration clauses contained in AT & T Mobility's wireless agreements,[10] the trial court proceeded to determine whether the arbitration agreement was enforceable in light of this Court's opinion in *Dunlap.* *See* 211 W.Va. 549, 567 S.E.2d 265 (2002). Believing that it could not "rule in favor of arbitration without contravening the law set forth in *Dunlap,*" the trial court concluded that the prohibition of class actions and punitive damages[11] rendered the various adhesion contracts[12] at

issue unconscionable.[13] Based on this ruling of unconscionability, the trial court denied the motion of AT & T Mobility to compel arbitration on December 1, 2009.

On February 18, 2010, AT & T Mobility filed a petition with this Court seeking a writ of prohibition in connection with the trial court's refusal to compel arbitration. As the basis for its petition, AT & T Mobility raised two issues: "(1) Whether an arbitration provision like ATTM's, which neither imposes undue costs on the consumer nor limits the consumer's remedies, is unenforceable under West Virginia law merely because it requires that arbitration be conducted on an individual basis; and (2) Whether the FAA [Federal Arbitration Act] precludes interpreting West Virginia law to deem arbitration provisions unenforceable merely because they require that arbitration be conducted on an individual basis."

This Court issued a rule to show cause on April 14, 2010, returnable on September 8, 2010. On June 14, 2010, AT & T Mobility filed a motion seeking to continue oral argument and stay proceedings on the writ of prohibition in light of an appeal currently pending before the United States Supreme Court[14] that presents the issue of whether the Federal Arbitration Act preempts states from conditioning the enforcement of an arbitration agreement on the availability of procedures such as class wide arbitration when those procedures are not necessary to ensure that the parties may fully vindicate their rights. Upon determining that the second of two issues raised by AT & T Mobility in the

---

is more than AT & T Mobility's last settlement offer.

**9.** Ms. Shorts' counsel represented during oral argument that he did not object to the trial court's ruling that the 2005 agreement, along with the 2006 and 2009 modifications, are the controlling provisions with regard to arbitration.

**10.** *See supra* note 8.

**11.** The inclusion of a ban on punitive damage recovery as a justification for its ruling is problematic for two reasons. First, the trial court recognized in its order that beginning with the 2005 agreement, punitive and statutory damages are recoverable in arbitration to the same extent as in court. Second, Ms. Shorts is not seeking punitive damage recovery through her counter-

claim demands. Given this inconsistency, we view the class action restriction as the sole basis for the trial court's ruling on unconscionability.

**12.** The parties agree that the contracts at issue are adhesory in nature.

**13.** Observing that were it not for *Dunlap,* its "decision might be different," the trial court commented that "[t]he facts in *Dunlap* ... were a lot more inexcusable than the claims of wrongdoing suffered by Shorts in this case."

**14.** The high court granted certiorari to the Ninth Circuit Court of Appeals' decision in *Laster v. AT & T Mobility LLC,* 584 F.3d 849 (9th Cir.2009), and the case is denominated on appeal as *AT & T Mobility LLC v. Concepcion. See* —— U.S. ——, 130 S.Ct. 3322, 176 L.Ed.2d 1218 (2010).

petition before us is likely to be addressed by the United States Supreme Court in *AT & T v. Concepcion*,[15] we limited our consideration in this proceeding to the issue of whether the absence of class wide arbitration in a consumer arbitration agreement renders the arbitration agreement unconscionable *per se* under West Virginia law.

## II. Standard of Review

 AT & T Mobility contends that the trial court exceeded its powers when it refused to enforce Ms. Shorts' agreement to arbitrate. As we recognized in *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 613 S.E.2d 914 (2005), a writ of prohibition may be utilized to obtain review of a trial court's decision regarding arbitration when the lower court exceeds its powers. *Id.* at 772, 613 S.E.2d at 920. The standard by which we determine whether a trial court exceeded its legitimate powers is set forth in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear

error as a matter of law, should be given substantial weight.

With these factors in mind, we proceed to determine whether AT & T Mobility has established the necessary grounds for a writ of prohibition.

## III. Discussion

AT & T argues that the trial court wrongly read this Court's decision in *Dunlap* as requiring a determination that any contractual provision which prevents class wide arbitration necessarily renders the agreement unenforceable on grounds of unconscionability. As the trial court made crystalline in its order, it viewed the decision it reached as ineluctable under *Dunlap*. In reaching its decision below, the trial court misapprehended the dictates of our ruling in *Dunlap*.

 In its ruling, the lower court expressed the conviction that its judicial hands were effectively tied in ruling on the enforceability of the subject arbitration provisions.[16] As we recognized in *Dunlap*, determinations of unconscionability must be made on a "case-by-case basis." *See* 211 W.Va. at 560 n. 5, 567 S.E.2d at 276 n. 5. In articulating the Court's ruling in *Dunlap*, we made clear that our decision was tied to and based upon the facts presented in that particular case. *See* 211 W.Va. at 564, 567 S.E.2d at 280. Moreover, in adopting two new standards for identifying what types of provisions make an adhesion contract unconscionable in syllabus points two and four of *Dunlap*, this Court recognized and provided for exceptions to the rules being established. Both of those points of law expressly grant the trial court authority to "determine[ ] that exceptional circumstances exist that make the provisions conscionable." *See Dunlap* 211 W.Va. at 550–51, 567 S.E.2d at 266–67, syl. pts. 2, 4. Consequently, the trial court's viewing of our decision in *Dunlap* as requiring an "across the board" ruling of unconscionability based solely on the absence of class action relief was unfounded.[17]

15. *See supra* note 14.

16. *See supra* note 13.

17. While the trial court's order purported to predicate unconscionability on the absence of both class action relief *and* punitive damages, punitive damages are not banned under the

■ While *Dunlap* was clearly an expansion of our jurisprudence, that decision did not alter the legal underpinnings necessary to establish unconscionability. In discussing the elements of an unconscionability claim in *Saylor,* we identified " 'gross inadequacy in bargaining power' combine[d] with 'terms unreasonably favorable to the stronger party' " as the foundation for such a claim. 216 W.Va. at 774, 613 S.E.2d at 922 (quoting *Troy Mining Corp. v. Itmann Coal Co.,* 176 W.Va. 599, 604, 346 S.E.2d 749, 753 (1986)). In *Saylor,* we recognized the continuing validity of the four-part test that we first adopted in syllabus point four of *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co.,* 186 W.Va. 613, 413 S.E.2d 670 (1991), for proving unconscionability: " 'A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract.' " 216 W.Va. at 774, 613 S.E.2d at 922.

■ In *Dunlap,* we identified in generalized terms the types of provisions contained in an adhesion contract that may qualify as unfair for purposes of unconscionability. In syllabus point two of *Dunlap* we held:

> Exculpatory provisions in a contract of adhesion that if applied would prohibit or substantially limit a person from enforcing and vindicating rights and protections or from seeking and obtaining statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable.

211 W.Va. at 550, 567 S.E.2d at 266, syl. pt. 2. Further clarifying what constitutes unfairness in terms of unconscionability, we held in syllabus point four of *Dunlap*

> Provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

211 W.Va. at 551, 567 S.E.2d at 267, syl. pt. 4.

■ Looking to the specific result that obtained in *Dunlap* rather than applying the additional standards that we adopted in *Dunlap,* the trial court incorrectly reasoned that *all* contracts of adhesion that bar punitive damages and class wide relief are facially unconscionable. *Dunlap* does not impel or require that conclusion.[18] As this Court recognized in *Dunlap,* every case in which the issue of an unconscionable adhesion contract is raised must be examined on the basis of the language of that particular contract in conjunction with the specific facts surrounding the dispute.

■ As we observed in *State ex rel. Clites v. Clawges,* 224 W.Va. 299, 685 S.E.2d 693 (2009), "the fact that the Agreement is a contract of adhesion does not necessarily mean that it is also invalid." *Id.* at 306, 685 S.E.2d at 700. Because there are adhesion contracts that deserve to be enforced and others that do not, this Court looks at a host of factors to determine whether the terms at issue qualify as unconscionable. *See id.* at 306, 685 S.E.2d at 700 (quoting *Dunlap,* 211

---

agreement found to be controlling by the trial court and the counterclaim plaintiffs are not seeking punitive damages. *See supra* note 11.

**18.** Rather than categorically denouncing arbitration, we recognized in *Dunlap* that it is an "honorable mechanism" "that has found a respected place in the commercial life of our nation." 211 W.Va. at 568, 567 S.E.2d at 284.

W.Va. at 557, 567 S.E.2d at 273). The starting point for conducting an unconscionability analysis is the four-part test we identified in *Art's Flower Shop.* Upon application, that test requires an examination of the relative position of the parties; inquiry into each party's bargaining power; consideration of the availability of meaningful alternatives; and identification of specific unfair terms in the subject contract. *See* 186 W.Va. at 614, 413 S.E.2d at 671, syl. pt. 4. As a means of assessing the fairness of the contractual terms being challenged, we identified two additional inquiries in *Dunlap:* (1) whether the contract prevents a claimant from vindicating his or her rights; and (2) whether the costs of arbitration are unreasonably burdensome. *See Dunlap,* 211 W.Va. at 550–51, 567 S.E.2d at 266–67, syl. pts. 2, 4.

■ Standing alone, the lack of class action relief does not render an arbitration agreement unenforceable on grounds of unconscionability under this Court's decision in *Dunlap. See Schultz v. AT&T Wireless Svs., Inc.,* 376 F.Supp.2d 685, 690 (N.D.W.Va.2005) (stating that Fourth Circuit does not consider class action waiver to render arbitration agreement unconscionable *per se* ); *Tillman v. Commercial Credit Loans, Inc.,* 362 N.C. 93, 655 S.E.2d 362, 373 (2008) (recognizing that class action ban is factor for consideration but is not dispositive of unconscionability); *but see Hall v. AT & T Mobility LLC,* 608 F.Supp.2d 592, 603–04 (D.N.J.2009) (applying California law and finding that "consumer friendly" arbitration provisions were unconscionable because individuals are not induced to bring suit based on likely amount of recovery and company is effectively immunized "from claims that would be suitable for class action resolution"); *Scott v. Cingular Wireless,* 160 Wash.2d 843, 161 P.3d 1000, 1004 (2007) (recognizing that majority of jurisdictions uphold class action waivers but citing cases from fifteen jurisdictions holding that class action waivers in arbitration agreements were substantively unconscionable). Instead, it is just one factor to be examined

in considering whether the contractual terms are unfair. *See Troy Mining,* 176 W.Va. at 601, 346 S.E.2d at 750, syl. pt. 3 (holding that "[a]n analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole").

In *Dunlap,* we expressed doubt that "small-dollar/high volume" claims such as that at issue would be pursued without the availability of class action relief.[19] *See* 211 W.Va. at 562, 567 S.E.2d at 278. Underlying this observation was concern that, either because of difficulty in obtaining counsel willing to handle such small dollar claims or because the amount of monetary relief is limited, these claims would go unredressed. *See id.* at 562, 567 S.E.2d at 278; *accord Tillman,* 655 S.E.2d at 373 (stating that prohibition of class actions "contributes to the financial inaccessibility of the arbitral forum ... because it deters potential plaintiffs from bringing and attorneys from taking cases with low damage amounts in the face of large costs that cannot be shared with other plaintiffs"); *but see Jenkins v. First Am. Cash Advance,* 400 F.3d 868, 878 (11th Cir.2005) (observing that "when the opportunity to recover attorneys' fees is available, lawyers will be willing to represent such debtors in arbitration"); *Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 638 (4th Cir.2002) (rejecting argument that class actions are necessary vehicle for obtaining legal representation of consumer claims based on broad availability of statutory attorney's fees in arbitration); *Johnson v. West Suburban Bank,* 225 F.3d 366, 374 (3rd Cir.2000) (finding that class action waivers in arbitration agreements do not "necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors").

Based on the limited record that is before us, it appears that this case stands in severe contrast to the concerns of legal representation; burdensome mediation costs; and nom-

---

**19.** At issue in *Dunlap* was an unauthorized charge of $8.46, comprised of $1.48 for credit life insurance and $6.96 for property insurance in connection with a jewelry purchase. 211 W.Va. at 551, 567 S.E.2d at 267.

inal recovery that we articulated in *Dunlap.* Pursuant to the arbitral provisions that the trial court found to be controlling (2005 agreement plus the 2006 and 2009 modifications),[20] Ms. Shorts bears no costs with regard to an arbitration proceeding. As to her potential recovery, the governing arbitration clause provides that there is a minimum recovery of $10,000 for any customer who is awarded more in arbitration than the last written settlement offer made by AT & T Mobility. And if the arbitral award exceeds the last settlement offer extended by AT & T Mobility, the claimant has a right to double attorney's fees. This double award is in addition to any attorney's fees and expenses the customer has a right to under applicable state laws. Finally, as mentioned above, Ms. Shorts' relief is not limited by the arbitration forum as she is entitled, under the provisions the trial court found to govern, to an award that provides for all statutory and punitive relief that is available in a court. These same arbitration provisions were recently upheld by a federal district court judge. *See Wince v. Easterbrooke Cellular Corp.,* 681 F.Supp.2d 679, 685 (N.D.W.Va.2010).[21]

While the trial court made a finding as to which arbitration provisions governed the parties' dispute, it did not proceed to make the determinations required for declaring an adhesion contract to be unconscionable.[22] The trial court made no findings as to the four-part test we articulated in *Art's Flower Shop.* *See* 186 W.Va. 613, 413 S.E.2d 670, syl. pt. 4. Similarly, while relying on *Dunlap* as the basis for its ruling, the trial court failed to rule on whether the applicable arbi-

tration terms prevent Ms. Shorts from vindicating her rights and whether the costs attendant to pursuing her claims in arbitration are unreasonably burdensome. *See Dunlap,* 211 W.Va. at 550–51, 567 S.E.2d at 266–67, syl. pts. 2, 4. When this matter is returned to the circuit court, the trial court should evaluate the provisions of the arbitration clause it has found to control against the ability of Ms. Shorts to enforce her rights in connection with her claims.[23] This determination will necessarily involve a consideration of the financial costs to proceed in arbitration; the opportunity to address her claims in arbitration; and the ability to seek redress for her claims in arbitration.

In light of the trial court's misinterpretation of our decision in *Dunlap* and its failure to engage in a meaningful analysis of whether the subject arbitration provisions are unconscionable, we grant the writ as moulded to require the trial court to review its ruling on AT & T Mobility's motion to compel arbitration. In reviewing the motion, the trial court is required to make specific findings on the issue of unconscionability that comport with the tests for unconscionability we established in *Art's Flower Shop* and in *Dunlap.*

Writ granted as moulded.

---

**20.** This Court does not address the issue of which agreement is controlling, finding that the issue is not properly before us. *See supra* note 9.

**21.** After delineating the various incentives to bring claims (e.g. no costs to claimants, unlimited relief, possibility of $10,000 award plus double attorney's fees), the court rejected the plaintiffs' defense of unconscionability, stating that "in light of these ... incentives, the class action restriction cannot be deemed unfair." *Wince,* 681 F.Supp.2d at 685.

**22.** To be clear, this Court takes no position on whether the contractual provisions at issue are

unconscionable. Given the undeveloped record on the issue, such a determination cannot be made.

**23.** As this Court made clear in *Dunlap,* the denial of the consumer's right to present claims to a jury was not a basis for our determination that the contract at issue was unconscionable. *See* 211 W.Va. at 561, 567 S.E.2d at 277 (acknowledging "complex issues of federalism" and stating that "we ... give no weight to Mr. Dunlap's state constitutional rights to a jury trial in the public court system").