IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

No. 17-0088

**FILED**
**February 16, 2018**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HAMPDEN COAL, LLC, AND OLIVER HUNT,
Defendants Below, Petitioners

v.

MICHAEL R. VARNEY,
Plaintiff Below, Respondent

Appeal from the Circuit Court of Mingo County
Honorable Darrell Pratt, Judge (sitting by special assignment)
Civil Action No. 16-C-113

REVERSED AND REMANDED

Submitted: January 9, 2018
Filed: February 16, 2018

Ashley C. Pack, Esq.                         Nathan Brown, Esq.
Jennifer J. Hicks, Esq.                      Ferrell & Brown, PLLC
Dinsmore & Shohl PLLC                        Williamson, West Virginia
Charleston, West Virginia                    Counsel for Respondent
Counsel for Petitioners

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013).

2. "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W.Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W.Va. 465, 796 S.E.2d 574 (2017).

3. "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).

4. "'Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity

i

for the revocation of any contract.' Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)." Syl. Pt. 1, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

5. "'A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.' Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)." Syl. Pt. 9, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

6. "'Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.' Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)." Syl. Pt. 12, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

7. "'Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.' Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011)." Syl. Pt. 10, *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012).

8. "When a written contract is clear and unambiguous its meaning and legal effect must be determined solely from its contents and it will be given full force and effect according to its plain terms and provisions." Syl. Pt. 3, in part, *Kanawha Banking & Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).

LOUGHRY, Chief Justice:

Hampden Coal, LLC and Oliver Hunt (defendants below; collectively "the petitioners"), appeal the Circuit Court of Mingo County's order entered on December 29, 2016, through which it denied their motion to dismiss and compel arbitration in this action brought by the respondent (plaintiff below), Michael R. Varney, alleging a deliberate intent claim[1] and violations of the West Virginia Human Rights Act.[2] The petitioners assign error in the circuit court's ruling that the parties' arbitration agreement was unconscionable and lacked consideration and that Mr. Varney's claims fell outside the scope of that agreement. Upon our review of the parties' briefs, the arguments of counsel, the appendix record submitted, and the applicable law, we reverse the circuit court's rulings and remand this action to the circuit court for entry of an order dismissing this civil action and compelling arbitration.

### I. Facts and Procedural Background

In 2000, Mr. Varney began working for Hampden Coal Company, LLC. The assets of Hampden Coal Company, LLC were purchased by the petitioner, Hampden Coal, LLC ("Hampden Coal") in August of 2014, after which employees were transitioned to

---

[1]W.Va. Code § 23-4-2(c) (2017).

[2]W.Va. Code §§ 5-11-1 to -20 (2013 & Supp. 2017).

1

Hampden Coal. Mr. Varney's employment with Hampden Coal, as well as that of all employees, was conditioned upon him signing a Mutual Arbitration Agreement ("Agreement"). Through this one and one-half-page Agreement, which the parties signed on September 3, 2014, Hampden Coal and Mr. Varney jointly consented

> to submit all past, present or future disputes that arise between us to final and binding arbitration. This means that a neutral arbitrator will decide any legal dispute between us, instead of a judge or jury. The Federal Arbitration Act and the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes, then in effect,[3] govern arbitrations under this Agreement. Hampden Coal and I waive our right to go to court in exchange for this right to arbitration.

(Footnote added). This Agreement further records the parties' mutual assent to arbitrate

> all disputes or claims of any kind includ[ing] but [] not limited to claims of unlawful discrimination, retaliation or harassment based upon race, national origin, ancestry, disability, religion, sex, age, workers' compensation claims or history, veteran's status, or any other unlawful reason, and all other claims relating to employment or termination from employment. This shall also

---

[3]Rule 6.a. of the current AAA Employment Arbitration Rules and Mediation Procedures is a clear and unmistakable delegation provision. *See* Syl. Pt. 4, *Schumacher Homes of Circleville, Inc. v. Spencer*, 237 W.Va. 379, 787 S.E.2d 650 (2016) ("A 'delegation provision' is a clause, within an agreement to arbitrate, which clearly and unmistakably provides that the parties to the agreement give to the arbitrator the power to decide the validity, revocability or enforceability of the arbitration agreement under general state contract law."). We have recognized that the "incorporation of the AAA rules into the arbitration agreements is sufficient evidence that the parties clearly and unmistakably agreed to arbitrate arbitrability." *W.Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W.Va. 465, 479, 796 S.E.2d 574, 588 (2017). In the case at bar, the petitioners have never relied upon the delegation provision in the AAA rules. In *Employee Resource Group, LLC v. Harless*, No. 16-0493, 2017 WL 1371287 (W.Va. Apr. 13, 2017) (memorandum decision), we did not address the delegation provision where the petitioners had never relied upon it. *Id.* at *2 n.4. Likewise, we do not consider the delegation provision in the instant matter.

2

include claims for wages or other compensation due, claims for breach of any contract, tort claims or claims based on public policy. This Agreement does not, however, limit any right to file a charge with or assist any government agency, including the EEOC and the NLRB, or the right to file a claim for workers' compensation benefits or unemployment insurance compensation; nor does it apply to employment benefit plans regulated by the Employee Retirement Income Security Act.

The parties also agreed that a claim must be filed for arbitration "within the same time period that they would have to file a lawsuit in court or one-year from the date of the event forming the basis of the lawsuit, whichever expires first. The parties waive any and all limitation periods to the contrary." Consideration for the Agreement is described therein as the parties' mutual promises to arbitrate any disputes between them and Hampden Coal's "employment and continued employment" of Mr. Varney, "as well as, the benefits and compensation provided by Hampden Coal[.]"[4] Above the space indicated for signatures, the Agreement provides in bold lettering: "**This Mutual Arbitration Agreement contains legally binding promises. Please seek legal advice, of your choosing, instead of signing this Agreement if you do not understand or have questions about any part of this Agreement.**"

---

[4]The "*Consideration*" paragraph contains a scrivener's error, referencing Mr. Varney's employment and continued employment with "Blue Diamond." This error was corrected through an Addendum signed by the parties and dated July 28, 2015. The Addendum notes the "mistaken reference to an affiliate company, Blue Diamond" and re-states the "*Consideration*" paragraph, substituting "Hampden Coal" for "Blue Diamond." This scrivener's error is discussed in section B., *infra*.

On June 21, 2016, Mr. Varney instituted this civil action against Hampden Coal and Oliver Hunt, his supervisor, in the Circuit Court of Mingo County, alleging a deliberate intent claim under West Virginia Code § 23-4-2 related to his workplace injury in January 2016, for which he had been awarded workers' compensation benefits, as well as two violations of the West Virginia Human Rights Act arising out of Hampden Coal's and Mr. Hunt's alleged decision to demote Mr. Varney following an illness that required hospitalization in December 2015.[5] In response to the complaint, the petitioners filed a motion to dismiss or, in the alternative, compel arbitration.

Following briefing by the parties and a hearing before the circuit court during which the parties presented oral argument only, the circuit court denied the motion. In its order entered on December 29, 2016, the circuit court observed that "[n]either party submitted any affidavits or testimony for the record[,]" after which it found that the parties' Agreement is an employment contract; that arbitration agreements are viewed differently in an employment context in comparison to a commercial context; that the Agreement is a contract of adhesion; that the language in the Agreement instructing Mr. Varney to seek legal advice if he did not understand or had questions about the Agreement is disingenuous; that

[5]There are references in the appendix record and the parties' briefs to Mr. Varney's alleged termination, as well as his alleged demotion upon his return to work from the illness he suffered in December 2015. Because he suffered a workplace injury in January 2016, demotion appears more likely. Seeking clarification, Mr. Varney's counsel was asked during oral argument whether Mr. Varney's employment was terminated. Counsel responded that he did not believe so.

4

the Agreement is invalid because it lacks consideration; that the Agreement is both substantively and procedurally unconscionable; that the deliberate intent claim falls outside the scope of the Agreement, which provides that it "does not limit any right to . . . file a claim for workers' compensation benefits[;]" and that the Human Rights Act claims fall outside the scope of the Agreement which provides that it "does not . . . limit any right to file a charge with or assist any government agency, including the EEOC and the NLRB[.]" This appeal followed.

## II. Standard of Review

The petitioners challenge the circuit court's denial of their motion to dismiss and compel arbitration. In *Credit Acceptance Corporation v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013), we held that "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." *Id.* at 519, 745 S.E.2d at 557, syl. pt. 1. Further, "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*." Syl. Pt. 1, *W.Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W.Va. 465, 796 S.E.2d 574 (2017). Our review is also plenary to the extent our analysis requires us to examine the circuit court's interpretation of the parties' Agreement. *Zimmerer v. Romano*, 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009) ("[W]e apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract."). This matter being properly before this

5

Court, we proceed to determine whether the circuit court erred in refusing to compel arbitration.

## III. Discussion

We begin by observing that "[w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W.Va. 250, 692 S.E.2d 293 (2010).[6] Here, the circuit court denied the motion to compel arbitration, finding the parties' Agreement to be invalid and unenforceable, and further finding that Mr. Varney's claims fall outside the scope of the Agreement. The petitioners assign various errors in their challenge to these rulings, each of which we address below.

---

[6]The parties do not dispute that the Agreement falls under the Federal Arbitration Act ("FAA").

## A. Whether Arbitration Agreements are viewed differently in an Employment Context

The petitioners assert that the circuit court cited no legal authority for its erroneous ruling that arbitration agreements are viewed differently in an employment context compared to a commercial context. They emphasize that this Court has routinely enforced arbitration agreements in the employment context under the same standards it applies to any arbitration agreement. Conversely, Mr. Varney argues that the circuit court's ruling was correct. He relies upon *Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 729 S.E.2d 217 (2012) ("*Brown II*"), in which this Court stated that courts "are more likely to find unconscionability in consumer transactions and employment agreements than in contracts arising in purely commercial settings involving experienced parties." *Id*. at 392-93, 729 S.E.2d at 227-28 (quoting *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 681, 724 S.E.2d 250, 285 (2011) ("*Brown I*"), *overruled in part on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012) (per curiam)).

The petitioners are correct in their argument that this Court has never held that more stringent or different standards apply to our consideration of arbitration agreements in different contexts, nor have we ever adopted separate rules or factors for consideration of arbitration agreements in the employment context. Rather, we have generally held that "[p]rocedural unconscionability involves a variety of inadequacies . . . includ[ing], . . . the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms;

7

the adhesive nature of the contract; and the manner and setting in which the contract was formed[.]" *Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 10, in part (footnote added).[7] We then explained that a consideration of these factors will more likely lead courts to find unconscionability in consumer transactions and employment agreements in comparison to commercial contracts between experienced parties. *Id.* at 392-93, 729 S.E.2d at 227-28. In other words, we simply recognized that these factors could lead to differing results depending upon the factual setting giving rise to the contract or agreement. Accordingly, this Court makes clear that we apply the same legal standards to our review of all arbitration agreements.

## B. Consideration and Mutuality

The petitioners assign error in the circuit court's ruling that the Agreement is unsupported by sufficient consideration "because it was not bargained for and lacks mutuality" in that Hampden Coal "would simply terminate" Mr. Varney's employment if it had a claim against him.[8] They assert that the plain language of the Agreement reflecting the

---

[7]Procedural unconscionability is addressed in section C. ii., *infra.*

[8]Although the circuit court made this observation in the context of ruling there was insufficient consideration for the Agreement, Mr. Varney addresses it, albeit briefly, as part of his procedural unconscionability argument. *See infra* section C. ii. In a single sentence in his brief and without citation to any legal authority, he asserts that the terms of the Agreement are "skewed" in the petitioners' favor because the petitioners can terminate him as an at-will employee should they have any issue with his work performance. Mr. Varney's argument is unavailing. *See, e.g., Garza v. Thomas Jude Henry, P.C.,* SA-14-CA-877-OLG,
(continued...)

8

parties' mutual obligation to arbitrate is, alone, sufficient consideration to support the formation of a contract under well-settled law in West Virginia. Arguing further, they state that the circuit court's reasoning is neither supported by any language in the Agreement nor by any other evidence.[9] Regarding the scrivener's error in the "Consideration" paragraph of the Agreement referencing "Blue Diamond," the petitioners argue this error does not diminish the consideration for the Agreement because the parties always intended the Agreement to be between Hampden Coal and Mr. Varney; Mr. Varney was fully aware that he was employed by Hampden Coal and not Blue Diamond; and the error was corrected through the Addendum that the parties signed. Lastly, the petitioners assert that even without the Addendum, the Agreement remains supported by the valuable consideration of the parties' mutual promises to arbitrate.

Correctly observing that consideration is a key component of any contract, Mr. Varney counters that the stated consideration in the Agreement is his "employment and continued employment" with "Blue Diamond" and, because he has never been employed by

---

[8](...continued)
2014 WL 11332307, *5 (W.D. Tex. Dec. 4, 2014) ("In sum, that the at-will employment can be terminated at-will . . . does not mean the . . . arbitration provision is unenforceable (because it is illusory; not supported by adequate, mutual consideration; does not reflect a mutuality of promises; or otherwise, as argued by plaintiffs)."). Moreover, "only a modicum of bilaterality is required to avoid a determination of unconscionability." *Nationstar Mortg.,LLC v. West*, 237 W.Va. 84, 92, 785 S.E.2d 634, 642 (2016) (citations omitted).

[9]As indicated above, the only evidence before the circuit court was the Agreement and the Addendum. The parties did not offer any affidavits or testimony for the record.

Blue Diamond, the Agreement is invalid for lack of consideration. Although he apparently agreed below that the reference to Blue Diamond was merely a typographical error that was corrected through the Addendum,[10] he now argues that there cannot be a subsequent modification of a contract without additional consideration.[11] He contends that he was required to sign the Addendum to remain employed, but that continued employment was already promised to him when he signed the Agreement, and that promising to perform what a party is already bound to do is insufficient consideration.

We agree with the petitioners that a mutual agreement to arbitrate is sufficient consideration to support an arbitration agreement. In *Toney v. EQT Corp.*, No. 13-1011, 2014 WL 2681091 (W.Va. June 13, 2014) (memorandum decision), we addressed whether an arbitration agreement was supported by adequate consideration. We concluded that "the mutual commitments to arbitrate alone constitute sufficient consideration to support the contract." *Id.* at *3; *see also Citizens Telecomms. Co. of W.Va. v. Sheridan*, 239 W.Va. 67,

---

[10]The circuit court stated in its order on appeal that the Agreement contains a "typographical error" and that "[t]he parties do not dispute that the error was corrected by way of an addendum[.]"

[11]Mr. Varney relies upon *Bischoff v. Franseca*, 133 W.Va. 474, 56 S.E.2d 865 (1949), which involved an alleged oral modification of a written agreement. The modification, if proven, would charge the plaintiffs with a portion of the defendants' general overhead without any additional compensation for their assumption of additional burdens not contemplated in the parties' written agreement. Here, the Addendum did not materially alter the parties' Agreement; rather, it simply corrected a scrivener's error. *See supra* note 11.

__, 799 S.E.2d 144, 152 (2017) (relying upon *Toney* and ruling that "the mutual commitment to arbitrate is sufficient consideration for the modification" of contract that added arbitration provision). Our ruling in *Toney* was also recognized in *Evans v. TRG Customer Solutions, Inc.*, No. 2:14-00663, 2014 WL 12659420 (S.D. W.Va. July 29, 2014), wherein the district court stated that "[u]nder West Virginia law, a mutual agreement between an employer and employee to arbitrate their claims establishes adequate consideration." *Id.* at *4. Other jurisdictions are in agreement. *See*, *e.g.*, *Lizalde v. Vista Quality Mkts.*, 746 F.3d 222, 225 (5th Cir. 2014) ("As it relates specifically to arbitration agreements, the '[m]utual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement.' *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010)."); *Uszak v. AT & T Mobility Servs. LLC*, 658 Fed. App'x 758, 763 (6th Cir. 2016) ("A mutual agreement by both parties to submit a claim to arbitration is sufficient consideration under Ohio law.").

Although Mr. Varney argues that the sole purpose of the Addendum was to alter the consideration for the Agreement, it is abundantly clear to this Court that the function of the Addendum was to correct the scrivener's error that referenced "Blue Diamond" in the Consideration paragraph of the Agreement. As indicated above, the circuit court stated in its order that the reference to Blue Diamond was a typographical error that was corrected through an addendum.[12] The parties were clearly aware at the time the Agreement was

---

[12]*See supra* note 10.

11

signed that Hampden Coal was the employer–not Blue Diamond–and, at the time the Addendum was signed, Mr. Varney had been working for Hampden Coal for several months.

Under the authorities discussed above, the parties' mutual and unequivocal agreement to arbitrate their disputes serves as valuable consideration for the Agreement. Consequently, if we were to invalidate the Consideration paragraph of the Agreement because there was no new consideration given for the Addendum, there would still be adequate consideration for the Agreement. Therefore, we find there is sufficient consideration and mutuality to uphold the validity of the Agreement.

### C. Whether the Agreement is Both Procedurally and Substantively Unconscionable

Under the FAA, an arbitration clause may be unenforceable for unconscionability, provided that all contracts are subject to the same standard. *See* Syl. Pt. 2, in part, *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W.Va. 486, 729 S.E.2d 808 (2012) ("'Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses–such as laches, estoppel, waiver, fraud, duress, or unconscionability–may be applied to invalidate an arbitration agreement.'"). Further,

> "[u]nder the Federal Arbitration Act, 9 U.S.C. § 2, a written
> provision to settle by arbitration a controversy arising out of a
> contract that evidences a transaction affecting interstate
> commerce is valid, irrevocable, and enforceable, unless the

provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract." Syllabus Point 6, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011).

*Brown II*, 229 W.Va. at 385, 729 S.E.2d at 220, syl. pt. 1. The entirety of the circuit court's unconscionability ruling consists of a cursory summary of the parties' arguments, after which the court stated:

> This Court agrees with Plaintiff and finds that the Agreement is a contract of adhesion and that the language in the Agreement instructing Plaintiff to seek legal advice is disingenuous. In addition, this Court agrees with Plaintiff that the Agreement is both substantively and procedurally unconscionable and finds that the Agreement is one-sided and written for the benefit of Defendants.

As we have previously held:

> "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011).

*Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 9. With these precepts guiding our analysis, we proceed to determine whether the Agreement is both substantively and procedurally unconscionable and, therefore, unenforceable.

### i. Substantive Unconscionability

With regard to substantive unconscionability, we have held, as follows:

13

"[s]ubstantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011).

*Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 12. The petitioners assert that the circuit court erred in finding the Agreement to be substantively unconscionable where both Hampden Coal and Mr. Varney are bound by the same terms and conditions in the Agreement; both are required to submit disputes to the AAA pursuant to the AAA employment rules; and both have the same limitations period to submit a claim from the action giving rise to the dispute. The petitioners emphasize that the one and one-half-page Agreement is "short, written in plain English, advised Varney that he was waiving his right to pursue disputes in the courts, and encouraged Varney to seek legal counsel and advice if he had any questions or did not understand the provisions of the Agreement." They add that the Agreement contains neither fine print, legalese, nor any language that a high school graduate could not understand, and that there are no allegations that the Agreement was written to misguide or confuse.

Consistent with his response filed below in opposition to the petitioners' motion to compel arbitration, Mr. Varney narrowly focuses his substantive unconscionability

14

argument on "one specific substantive provision [that he asserts] absolutely renders the Agreement substantively unconscionable: that he has to arbitrate his claims and the Agreement provides that there is a one-year limitations period for actions, rather than the two-year statutory limitations period that would otherwise apply." He relies upon a handful of cases from other jurisdictions for the proposition that a shortened limitations period "may" be substantively unconscionable. We have reviewed the cases upon which he relies, but find they lend little support for his position.

For example, Mr. Varney cites *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165 (9th Cir. 2003), wherein the court found that the one-year limitations period in an arbitration provision would deprive employees of the benefit of the continuing violations doctrine available under California's Fair Employment and Housing Act. Mr. Varney does not argue that he will be deprived of any such benefit. He also relies upon *McKee v. AT & T Corp.,* 191 P.3d 845 (Wash. 2008). In *McKee*, the court recognized that "parties can shorten the applicable statute of limitations by contract unless a shorter time frame is unreasonable or prohibited by statute or public policy[,]" but found that an arbitration provision containing a two-year limitations period in a contract for long distance telephone service was against public policy as to consumer protection act claims and was, therefore, substantively unconscionable. *Id.* at 859. While Mr. Varney accurately observes that the public policy goal of the West Virginia Human Rights Act is the protection of citizens' rights and

15

liberties,[13] he fails to explain how the one-year limitations period in the Agreement takes away his ability to effectively protect those rights. While a two-year limitations period applies to human rights claims brought in circuit court,[14] the West Virginia Human Rights Act provides that "[a]ny complaint filed pursuant to this article must be filed within three hundred sixty-five days after the alleged act of discrimination." W.Va. Code § 5-11-10 (2013). This statutory one-year period certainly diminishes any argument that the one-year limitations period in the Agreement is so unreasonable as to render it substantively unconscionable.[15]

---

[13]*See Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 80, 380 S.E.2d 238, 247 (1989) ("The goal of the West Virginia human rights law is to protect the most basic, cherished rights and liberties of the citizens of West Virginia.").

[14]*See generally McCourt v. Oneida Coal Co.*, 188 W.Va. 647, 651, 425 S.E.2d 602, 606 (1992) ("*West Virginia Code*, 55-2-12, in this Court's opinion establishes the basic two-year, circuit court limitation period" for civil action asserting claim under West Virginia Human Rights Act).

[15]Mr. Varney cites two additional cases without any discussion: *Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So.3d 695 (Miss. 2009), and *Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146 (N.D. Cal. 2005). In *Covenant Health*, the court referenced earlier decisions invalidating certain provisions of the same arbitration agreement at issue, including a one-year limitations period that was found to be unconscionable because Mississippi statutory law dictates that a statutory limitations period cannot be changed by contract. *Id.* at 702 n.6; *see also* Miss. Code Ann. § 15-1-5 (2013) ("The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties[.]"). However, there is no such statutory prohibition in West Virginia. In *Jones*, the court found that a shortened limitations period in an arbitration agreement was unconscionable. The court reasoned that the federal Fair Labor Standards Act, under which the claim was filed, provides a two-tiered statute of limitations, which made it "'obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations [of the FLSA].'" *Id.* at 1149 (citation omitted). Such reasoning has no application to the case at bar.

16

The general rule has long been that parties may contractually agree to a shortened limitations period, as long as the period is reasonable. The United States Supreme Court reasoned more than a century ago that "[t]he policy of statutes of limitation is to encourage promptness in the bringing of actions . . . . But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short." *Missouri, K. & T.R. Co. v. Harriman Bros.*, 227 U.S. 657, 672 (1913). Relying, in part, upon *Harriman Bros.*, the Fourth Circuit considered an arbitration agreement that provided for a one-year period for commencing arbitration proceedings even though the federal antitrust act provided for a four-year limitations period. In *In re Cotton Yarn Antitrust Litigation,* 505 F.3d 274 (4th Cir. 2007), the Fourth Circuit observed that "[a]s a general rule, statutory limitations periods may be shortened by agreement, so long as the limitations period is not unreasonably short." *Id.* at 287. In determining whether the one-year limitations period was reasonable, the court stated:

> Courts have frequently found contractual limitations periods of one year (or less) to be reasonable. *See*, *e.g.*, *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357-59 (6th Cir. 2004) (finding a 6-month limitation period to be reasonable in a case raising claims under 42 U.S.C.A. § 1981); *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303-04 (11th Cir. 1998) (finding reasonable a 90-day limitations term contained in an ERISA-governed employee benefits plan); *see also Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n.16 (6th Cir. 2003) (en banc) (enforcing one-year limitations provision contained in arbitration agreement).

17

*In re Cotton Yarn*, 505 F.3d at 287. Based upon these authorities and after noting the absence of any language in the federal act that would prevent the parties from agreeing to a shortened limitations period, the Fourth Circuit concluded that the one-year period was reasonable. *Id.*; *see also*, *e.g.*, *Dunn v. Gordon Food Servs., Inc.*, 780 F. Supp. 2d 570 (W.D. Ky. 2011) (applying Kentucky law; finding employer may make agreement with prospective employee limiting time-period for suing employer if time period is reasonable; and ruling that one-year limitations period set forth in application for employment was reasonable).

In the instant matter, Mr. Varney and Hampden Coal mutually agreed to a one-year limitations period in their Agreement. Critically, Mr. Varney has failed to cite any statutory provision that would prevent the parties from agreeing to a shortened limitations period, nor has he established how the limitations period in the Agreement is unreasonable. In fact, Mr. Varney met the limitations period in the Agreement without any alleged difficulty, which further supports the reasonableness of the one-year limitations period.

While Mr. Varney's brief contains an argument heading that the Agreement is "unfair, one-sided, overly harsh, and all to [his] disadvantage,"[16] he supports this

---

[16]Had Mr. Varney offered argument in support of this heading, we would still find that the Agreement's terms are bilateral and not overly harsh. For example, the Agreement provides that "[t]he Arbitrator shall apply the same laws and be able to make the same actions to protect our rights as are available in court;" both parties are bound by the AAA rules; and, other than the initial cost for filing an arbitration, the Agreement provides that
(continued...)

18

contention with little more than his observation that the limitations period in the Agreement is shorter than that provided by statute. The Fourth Circuit addressed a similar situation in *In re Cotton Yarn:*

> The plaintiffs' arguments amount to little more than an observation that the limitations period under the arbitration agreements is shorter than that provided by federal law and the unremarkable recognition that limitations provisions affect the amount of damages that may be recovered. These same arguments, of course, could be made every time a contract establishes a shorter limitations period than that of an otherwise applicable statute. Given the established rule that statutory limitations periods can be contractually shortened, so long as the contractual period is not unreasonably short, the plaintiffs' remarking-on-the-obvious cannot suffice to carry their burden of establishing that the contractual limitations period is unreasonable.

505 F.3d at 288. Being equally unpersuaded by Mr. Varney's similar arguments, we conclude that the Agreement is not substantively unconscionable.[17]

---

[16](...continued)
Hampden Coal "will pay all the other costs of the Arbitration."

[17]Even if we were to find that Mr. Varney had demonstrated that the one-year limitations period was unreasonable, which we do not, the Agreement contains a severability clause. This clause provides that "[i]f any specific provision of this Agreement is invalid or enforceable, the remainder of this Agreement shall remain binding and enforceable." Consequently, the limitation provision could simply be severed from the Agreement, leaving the remainder of the Agreement enforceable. *See* Syl. Pt. 8, in part, *Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221 ("If a court, as a matter of law, finds . . . any clause of a contract to be unconscionable, the court may . . . enforce the remainder of the contract without the unconscionable clause[.]").

19

## ii. Procedural Unconscionability

Mr. Varney must establish *both* substantive *and* procedural unconscionability before the Agreement can be deemed unenforceable. *See Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 9, in part ("A contract term is unenforceable if it is both procedurally and substantively unconscionable.") (citation omitted). Inasmuch as we have determined that the Agreement is not substantively unconscionable, we need not address the issue of procedural unconscionability. Nonetheless, because we can readily dispense with the issue of procedural conscionability, we do so below.

We have held regarding procedural unconscionability, as follows:

> "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus Point 17, *Brown v. Genesis Healthcare Corp.*, 228 W.Va. 646, 724 S.E.2d 250 (2011).

*Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 10. In the instant matter, the petitioners assert that there is nothing inequitable or unfair about the process by which the Agreement was signed. While procedural unconscionability may exist where there is a

20

"'gross inadequacy in bargaining power' combine[d] with terms unreasonably unfavorable to the stronger party[,]"[18] the petitioners argue that even if the Agreement were a contract of adhesion, as Mr. Varney alleges, "[b]ecause contracts of adhesion are by definition typically prepared by a party with more power, [this Court does] not view that factor as persuasive in itself." *Nationstar Mortg., LLC v. West*, 237 W.Va. 84, 90, 785 S.E.2d 634, 640 (2016).

Conversely, Mr. Varney alleges that he is a coal miner with only a high school education who was presented with a contract of adhesion[19] to sign if he wished to remain employed in an industry that was experiencing "great volatility." He further alleges that after Hampden Coal purchased his previous employer, the petitioners gathered hundreds of employees into various rooms where they were presented with documents, including the Agreement, that they were instructed to sign if they wished to remain employed; that he had no opportunity or ability to review or negotiate the terms of the Agreement; and that although

---

[18]*State ex rel. AT&T Mobility, LLC v. Wilson*, 226 W.Va. 572, 578, 703 S.E.2d 543, 549 (2010) (quoting *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 774, 613 S.E.2d 914, 922 (2005); *see also State ex rel. Clites v. Clawges*, 224 W.Va. 299, 306, 685 S.E.2d 693, 700 (2009) (quoting *Saylor*, 216 W.Va. at 773, 613 S.E.2d at 921 and observing that contract of adhesion is offered by party in stronger bargaining position on "'take-it-or-leave-it basis'" and is not subject to negotiation, leaving weaker party with "'no realistic choice as to its terms.'").

[19]As we have previously explained, "'[t]here is nothing inherently wrong with a contract of adhesion. Most of the transactions of daily life involve such contracts that are drafted by one party and presented on a take it or leave it basis. They simplify standard transactions[.]'" *Nationstar Mortg.,* 237 W.Va. at 89 n.12, 785 S.E.2d at 639 n.12 (quoting *Brown I*, 228 W.Va. at 682, 724 S.E.2d at 286).

21

the Agreement advised him to seek legal advice if he did not understand or had questions about the Agreement, this was not true because he was told that all documents had to be signed and returned immediately. He argues that under this Court's precedent, the Agreement should be viewed differently than if it were between two commercial entities,[20] and that the circumstances under which he signed the Agreement demonstrate procedural unconscionability.

Upon our review of the parties' appendix record, we find no evidence to support any of Mr. Varney's allegations concerning his personal circumstances or the manner in which the Agreement was presented for his signature. Further, there is no evidence that he tried but was denied the opportunity to either seek the advice of counsel or negotiate any terms of the Agreement. It is axiomatic that his counsel's arguments are not evidence. There is simply "no evidence in the record to show that the manner or setting in which [Mr. Varney] received the [Agreement] or signed the [Agreement] prevented [him] from having a reasonable opportunity to understand the terms of the [A]greement." *Emp. Res. Group, LLC v. Harless*, No. 16-0493, 2017 WL 1371287, *4 ( W.Va. Apr. 13, 2017). We dispensed with similar arguments raised by the plaintiff in *New v. GameStop, Inc.*, 232 W.Va. 564, 753 S.E.2d 62 (2013), who alleged that she was an unemployed, high school graduate without any bargaining power when she sought employment with an international corporation:

---

[20]*See supra* section A.

Notwithstanding her assertions to the contrary, the petitioner has failed to offer any evidence that she was incapable due to age, literacy or lack of sophistication to understand the clear terms of the arbitration agreement or the Acknowledgment she signed upon her employment. *See Brown II*, 229 W.Va. at 386, 729 S.E.2d at 221, syl. pt. 10. She has also failed to offer any evidence that the arbitration agreement's terms were hidden from her or were couched in unduly complex terms. The petitioner's bald assertions that the arbitration agreement is procedurally unconscionable because the agreement was not subject to negotiation and because she was unemployed and had no other "meaningful alternatives available to her" other than to sign the Acknowledgment are simply not sufficient. *See Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 616 (S.D. W.Va. 2012) (concluding that where plaintiff failed to offer evidence "that she had no other alternative but to enter into a credit card agreement with . . . defendant[,] . . . [she] wholly fail[ed] to put forth any evidence that the Agreement was procedurally unconscionable other than her assertion that [it] was a contract of adhesion, which . . . does not in itself make a contract procedurally unconscionable."); [*State ex rel.*] *Clites* [*v. Clawges*,] 224 W.Va. at 306, 685 S.E.2d at 700 (finding that although arbitration agreement entered into upon plaintiff's employment was contract of adhesion because the "entire Agreement is boiler-plate language that was not subject to negotiation and there is no contention . . . that the Petitioner had any role or part in negotiating [its] terms[,]" agreement was not unconscionable). There is simply no evidence in the record to show that the manner or setting in which the petitioner signed the Acknowledgment prevented her from having a reasonable opportunity to understand the terms of the agreement.

*New*, 232 W.Va. at 578, 753 S.E.2d at 76 (footnote omitted). Similarly, in the case at bar, the record is void of any evidence concerning Mr. Varney's personal status or the manner in which the Agreement was presented for his signature. Consequently, we find no support for the circuit court's procedural unconscionability ruling.

23

## D. Whether the Claims fall Outside the Scope of the Agreement

Having determined that the Agreement is a valid, enforceable agreement to arbitrate that is neither substantively nor procedurally unconscionable, we now address whether the circuit court erred in ruling that Mr. Varney's claims fall outside the scope of the Agreement.

### i. Deliberate Intent Claim

The Agreement provides that by "signing this Agreement, Hampden Coal and I agree to submit all past, present or future disputes that arise between us to a final and binding arbitration." Through the broad language in the Agreement, the parties agreed to arbitrate

> all disputes or claims of any kind includ[ing] but [] not limited to claims of unlawful discrimination, retaliation or harassment based upon race, national origin, ancestry, disability, religion, sex, age, workers' compensation claims or history, veteran's status, or any other unlawful reason, and all other claims relating to employment or termination from employment.

However, the Agreement does not "limit any right to file a charge with . . . any government agency, including the EEOC and the NLRB, or the right to file a claim for workers' compensation benefits or unemployment insurance compensation[.]"

The circuit court concluded that Mr. Varney's deliberate intent claim was excluded from the Agreement, concurring in Mr. Varney's argument that the Workers' Compensation Act "provides numerous benefits for employees who are injured during the

24

course and scope of their work" and that "one of those benefits is that the system allows an employee to file an action known as deliberate intent[.]" Assigning error in this ruling, the petitioners argue that "workers' compensation benefits are monetary benefits paid through the Workers' Compensation Fund to employees who have received personal injuries in the course of and resulting from their covered employment. W.Va. Code § 23-4-1(a)." They observe that the workers' compensation statutes provide differing methods for seeking compensation benefits and for pursuing a deliberate intent claim, making clear that a deliberate intent claim is not a claim for workers' compensation benefits. The petitioners maintain that deliberate intent is a statutory tort that an injured employee may pursue in addition to a claim for workers' compensation benefits if certain statutory elements for such claim can be met. *See* W.Va. Code § 23-4-2(c).

Conversely, Mr. Varney argues that the right to file for workers' compensation benefits is specifically excluded from the Agreement, but the Agreement does not define the workers' compensation benefits it intends to exclude. Through application of a liberal construction to the remedial workers' compensation statute, he argues that the placement of the deliberate intent statute in the "Death and Disability Benefits" section of the Workers' Compensation Act evidences a legislative intent that a deliberate intent cause of action be defined as a "benefit" of the Workers' Compensation Act.

In addressing this issue, we are mindful that "[i]n determining whether the language of an agreement to arbitrate covers a particular controversy, the federal policy favoring arbitration of disputes requires that a court construe liberally the arbitration clauses to find that they cover disputes reasonably contemplated by the language and to resolve doubts in favor of arbitration." *State ex rel. City Holding Co. v. Kaufman*, 216 W.Va. 594, 598, 609 S.E.2d 855, 859 (2004). This Court has previously distinguished between a claim for workers' compensation benefits and a suit seeking damages through a deliberate intent cause of action. For example, in *Erie Insurance Property and Casualty Co. v. Stage Show Pizza, JTS, Inc.*, 210 W.Va. 63, 553 S.E.2d 257 (2001), we held that "[a] finding that an employer is liable pursuant to the deliberate intent provisions of *W.Va. Code*, 23-4-2 [1992] does not impose upon the employer a statutory obligation to pay fixed benefits, without regard to the fault of any party, for work-related injuries[.]" *Stage Show Pizza*, 210 W.Va. at 65, 553 S.E.2d at 259, syl. pt. 6, in part. Moreover, an employer is entitled to an offset of any workers' compensation benefits that have been paid to the employee against any damages awarded in a deliberate intent action. *See* Syl. Pt. 1, *Mooney v. Eastern Associated Coal Corp.*, 174 W.Va. 350, 326 S.E.2d 427 (1984) ("In a civil action brought under the deliberate intent provisions of W.Va. Code, 23-4-2 [1969], evidence of the value of compensation benefits *must* be submitted to the jury with instructions that any verdict for the plaintiff shall be for damages in excess of such benefits."). Further, West Virginia Code §23-4-2(c) (2017) expressly provides that "[i]f injury results to any employee from the deliberate intention of his or her employer to produce the injury or death, the employee . . . may . . .

26

bring a cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable in a claim for benefits under this chapter." Lastly, we agree with the petitioners that West Virginia Code § 23-4-2(c) reflects the Legislature's intent to create a narrow exception to the workers' compensation benefits system and the immunity provided thereunder through the deliberate intent cause of action.

Based on the above, and as "reasonably contemplated by the language"[21] of the Agreement, we find that the Agreement's exclusion of a claim for workers' compensation benefits does not extend to an action for deliberate intent. Accordingly, we find that Mr. Varney's deliberate intent claim falls within the scope of the Agreement.

## ii. Human Rights Act Claims

Mr. Varney asserted claims under the West Virginia Human Rights Act, but never argued below that those claims fell outside the Agreement. Nevertheless, the circuit court found that they did. In support of its ruling, the circuit court simply quoted the language in the Agreement providing that "[t]his Agreement does not . . . limit any right to file a charge with or against any government agency, including the EEOC and the NLRB" and then stated that Mr. Varney "did not file a charge with the Human Rights Commission, the Equaly [sic] Employment Opportunity Commission ('EEOC'), or the National Labor Relations Board ('NLRB')."

---

[21]*City Holding Co.*, 216 W.Va. at 598, 609 S.E.2d at 859.

27

Unsurprisingly, Mr. Varney alters his position on appeal to assert that his Human Rights Act claims arise under administrative law and are beyond the scope of the Agreement. The petitioners counter that the circuit court has "erroneously expanded the reach" of a provision in the Agreement that excludes certain administrative rights that cannot be contractually relinquished. They argue that Mr. Varney's Human Rights Act claims fall within the Agreement's language that expressly includes "claims of unlawful discrimination, retaliation or harassment based on race, national origin, ancestry, disability, religion, sex, age, workers' compensation claims or history, veteran's status, or any other unlawful reason, and all other claims relating to employment or termination from employment."

As the United States Supreme Court has recognized, "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act] FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). In considering Mr. Varney's statutory discrimination claims, we are mindful that it has long been the law in West Virginia that "[w]hen a written contract is clear and unambiguous its meaning and legal effect must be determined solely from its contents and it will be given full force and effect according to its plain terms and provisions." Syl. Pt. 3, in part, *Kanawha Banking & Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).

Here, the Agreement's express exclusion of certain administrative claims that cannot be contractually relinquished does not extend to the statutory discrimination claims

28

that Mr. Varney elected to pursue in the circuit court. Moreover, statutory claims can be the subject of an arbitration agreement. *Gilmer*, 500 U.S. at 26. As reflected in the clear and unambiguous language quoted above, we conclude that Mr. Varney's claims of unlawful discrimination indisputably fall within the ambit of the Agreement.

### E. Whether the Agreement is an Employment Contract

The Agreement contains the following provision: "*Not an Employment Agreement:* This Agreement is not, and shall not be construed to create a contract of employment, express or implied, and shall not alter my at-will employment status." Mr. Varney argued below that this provision renders the Agreement invalid, whereas the petitioners argued that this provision merely clarifies that the Agreement does not alter Mr. Varney's status as an at-will employee. In its order, the circuit court stated that it disagreed with the parties' arguments and found, instead, that the Agreement "is an *employment* contract."

It is unclear from the circuit court's order precisely how this particular ruling has any bearing on the circuit court's ultimate decision to refuse to compel arbitration in this matter. As the petitioners point out in their appellate brief, whether the Agreement is an employment contract is irrelevant to whether Mr. Varney's clams should be arbitrated. They maintain that the Agreement is not an employment contract; rather, it is a clear and unambiguous mutual agreement to arbitrate all disputes.

29

Although Mr. Varney did not cross-assign error in this ruling, he continues to argue, as he did before the circuit court, that there is no valid agreement and that, at best, this particular language in the Agreement creates ambiguity to be construed against Hampden Coal. Alternatively, he argues that if the Agreement is valid, then the circuit court correctly found that it is an employment contract.

We find that this particular language in the Agreement does not impact its enforceability. In *New*, the plaintiff did not dispute that she had signed an acknowledgment of the mutual agreement to arbitrate through which she indicated that "she understood that 'by continuing my employment with GameStop . . . I am agreeing that all workplace disputes or claims'" will be resolved through arbitration. 232 W.Va. at 572, 753 S.E.2d at 70. Nevertheless, she argued that the arbitration provisions set forth in the employment handbook were unenforceable because of the disclaimer in the handbook that provided, "'[y]ou do not have, nor does this Handbook constitute, an employment contract, express or implied.'" *Id.* This Court found that the unambiguous language in the handbook, the acknowledgment signed by the petitioner, and the petitioner's continued employment with GameStop, all "clearly demonstrate[d] that the parties mutually assented to arbitrate all covered workplace disputes or claims." *Id.* at 573, 753 S.E.2d at 71. In reaching our decision in *New*, we relied, in part, upon *Brown v. KFC National Management Co.*, 921 P.2d 146 (Haw. 1996), wherein the court stated:

A disclaimer appears in the second paragraph of the Agreement, but it is exclusively limited to the applicant's acknowledgment that "I am hereby informed and I understand that nothing contained in this application . . . shall constitute an implied or expressed contract of employment." In our view, the disclaimer could not reasonably be construed to render nugatory the other provisions of the Agreement . . . including the arbitration agreement located in the Employee Rights subsection.

Viewed in context, the arbitration agreement highlights–rather than camouflages–its general purpose, and the limited scope of the disclaimer is clear and unambiguous: the arbitration agreement obviously relates to the future possibility of employment and, in the event of employment, to employment-related controversies. The arbitration agreement expressly provided, in terms accessible to any literate English speaking applicant, that he or she "agree[d] to submit to binding arbitration" all possible future controversies "concerning . . . termination of employment[.]" The undisputed fact that the employment application did not, in itself, constitute an employment contract in no way undermines this simple reality.

*Id.* at 165; *see also Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997) (finding disclaimer in employee handbook that it was "not intended to constitute a legal contract with any employee" did not render arbitration agreement in handbook invalid and being persuaded, *inter alia*, by arbitration clause's use of "contractual terms such as 'I understand,' 'I agree,' I 'agree to abide by and accept,' 'condition of employment,' 'final decision,' and 'ultimate resolution.'"); *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564 (S.D. N.Y. 2013) (citation omitted) ("An arbitration agreement included in an employee handbook with language 'providing that the handbook does not constitute a . . . contract of employment or that the arbitration policy may be amended' is enforceable when the language

31

of the arbitration agreement is 'distinct and mandatory' and when the employee is advised of the policy and that 'compliance with it [is] a condition of employment.'").

This Court is bound by the basic principle that "'[a] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 1." Syl. Pt. 1, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981). Here, the unambiguous language in the Agreement signed by the parties clearly demonstrates that it is not an employment contract; rather, it comprises their mutual assent to submit "all past, present or future disputes that arise between us to final and binding arbitration." Under the reasoning in *New*, we find that the single sentence in the Agreement clarifying Mr. Varney's at-will employment status neither creates a contract of employment nor invalidates the parties' clear and unambiguous mutual agreement to arbitrate.

## IV. Conclusion

For the foregoing reasons, the circuit court's December 29, 2016, order denying the petitioners' motion to dismiss and compel arbitration is reversed. This action is remanded for entry of an order dismissing the civil action and compelling arbitration.

Reversed and Remanded.